[Cite as *McMaken v. Wright State Univ.*, 2010-Ohio-3480.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JAMES C. MCMAKEN, et al.

　　　Plaintiffs

　　　v.

WRIGHT STATE UNIVERSITY

　　　Defendant
　　　Case No. 2009-03801

Judge Alan C. Travis

DECISION

{¶ 1} On June 23, 2010, the parties filed a joint stipulation of facts regarding the civil immunity of Jonathan Saxe, M.D. and Kathryn Tchorz, M.D. pursuant to R.C. 2743.02(F) and 9.86. On June 24, 2010, defendant filed a supplement to Exhibit B of the stipulation.[1] The parties stipulated to the following facts:

{¶ 2} "1. At times relevant herein, following his injuries suffered in a horse riding accident on April 2, 2008, plaintiff Craig McMaken was a patient of Miami Valley Hospital in Dayton, Ohio. (Excerpts of medical records attached as exhibits to depositions of Drs. Saxe and Tchorz)

{¶ 3} "2. In April, 2008, Dr. Jonathan Saxe and Dr. Kathryn Tchorz were trauma surgeons on faculty staff of Wright State University Boonshoft School of Medicine working out of Miami Valley Hospital and were employed by both the [s]tate of

---

[1]On June 28, 2010, plaintiffs dismissed Mary McCarthy, M.D., from the connected action in the Montgomery County Court of Common Pleas by filing a notice of voluntary dismissal. Therefore, her immunity is no longer at issue in this case.

Ohio through Wright State University and Boonshoft School of Medicine by Wright State Physicians, a private practice group connected with the University.

{¶ 4} "3. Their duties as professors of medicine included teaching, research, and patient care. (Employment contracts attached as Exhibits A and B) Their duties in their private practice group included patient care.

{¶ 5} "4. The allegations of negligence in this action center around the care and treatment Mr. McMaken received from April 9, 2008, after an epidural catheter was removed from his thoracic spine, through April 12, 2008, when an MRI of the thoracic spine was performed and revealed an epidural abscess at that site.

{¶ 6} "5. It is alleged that Drs. Saxe and Tchorz, as well as various other physicians and health care providers who do not claim to have been acting as state employees, were negligent including but not limited to in delaying the MRI and thus the diagnosis of the abscess, and that earlier diagnosis and treatment would have prevented Mr. McMaken's paralysis.

{¶ 7} "6. On April 9-11, 2008, Dr. Tchorz was the attending trauma physician for Mr. McMaken and she [saw him during rounds on those] mornings. She testified that her practice is to round with her residents. It is alleged that there was evidence of an infection as early as April 9 and that an MRI should have been ordered and completed on April 10.

{¶ 8} "7. On the morning of April 11, 2008, a thoracic MRI was ordered by pain management 'now' or 'stat' to rule out a MRSA infection in the epidural space and approved by infectious disease. Also on that morning, Dr. Tchorz made the determination to take Mr. McMaken for an exploratory laparotomy instead of, or at least before, performing the MRI. In the ensuing 35 hours, the MRI was not performed, and it is alleged that the failure to obtain that MRI promptly was a deviation from the standard of care.

{¶ 9} "8. Dr. Tchorz and the residents all testified that the decision to perform the laparotomy was discussed between Dr. Tchorz and the residents. Plaintiffs allege that the failure to promptly perform the MRI either before or very soon after the laparotomy was negligent, regardless of whether he had the laparotomy.

{¶ 10} "9.   The medical record and the testimony of all persons involve[d] confirm that residents performed the laparotomy under Dr. Tchorz' supervision.  The technical performance of the surgery is not at issue in this case.

{¶ 11} "10.  Dr. Tchorz testified that she discussed the MRI with a resident or residents and that she very specifically instructed them to be sure that the MRI was performed 'that night,' as soon after the surgery as possible. None of the residents deposed have any recollection of that instruction.

{¶ 12} "11. The post operative orders, which were completed by residents, do not contain an order for the MRI.

{¶ 13} "12. On April 12, 2008, Dr. Saxe was the trauma attending for Mr. McMaken in ICU.
It is alleged that the ongoing failure on April 12 to obtain the MRI ordered on the morning of * * * April 11 was a continuing deviation from the standard of care. The trauma progress note on the morning of April 12 does not mention an order for the MRI, but Dr. Saxe testified that on April 12 he discussed with a resident getting an MRI when Mr. McMaken was stabilized.

{¶ 14} "13. Dr. Saxe rounded with a resident * * * in the morning and testified that he saw the patient with a resident several other times that day, although he did not make any additional notes in the chart.  He further testified that he always does his rounding with a resident or residents, and that he discussed Mr. McMaken's care with the ICU resident on April 12.  There is no evidence to dispute this testimony.

{¶ 15} "14.  Late in the afternoon on April 12, the thoracic MRI was reordered 'stat' by a trauma resident when an ICU nurse reported that Mr. McMaken had stopped moving his legs.  Dr. Saxe testified that he was instrumental in obtaining this order, but his involvement is not reflected in the medical record."

{¶ 16} R.C. 2743.02(F) states, in part:

{¶ 17} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the

officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶ 18} R.C. 9.86 states, in part:

{¶ 19} "[No officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 20} The Supreme Court of Ohio has held that "in an action to determine whether a physician or other health-care practitioner is entitled to personal immunity from liability pursuant to R.C. 9.86 and 2743.02[F], the Court of Claims must initially determine whether the practitioner is a state employee.  * * *

{¶ 21}  "If the court determines that the practitioner is a state employee, the court must next determine whether the practitioner was acting on behalf of the state when the patient was alleged to have been injured. If not, then the practitioner was acting 'manifestly outside the scope of employment' for purposes of R.C. 9.86. *If there is evidence that the practitioner's duties include the education of students and residents, the court must determine whether the practitioner was in fact educating a student or resident when the alleged negligence occurred."*  *Theobald v. University of Cincinnati,* 111 Ohio St.3d 541, 2006-Ohio-6208, ¶30-31.  (Emphasis added.)

{¶ 22} The parties in this case have stipulated that, in addition to their private practice positions, Drs. Saxe and Tchorz were faculty physicians employed by the state at defendant university's college of medicine.  Thus, the issue before the court is whether Drs. Saxe and Tchorz were acting on behalf of the state at the time when the alleged negligence occurred and, because it has been stipulated that their duties included the education of residents, whether they were, in fact, educating residents at the time of the alleged negligence.

{¶ 23} Upon review of the stipulated facts, it is apparent that Drs. Saxe and Tchorz were acting on behalf of the state and educating a resident, or residents, at all times pertinent to the care and treatment of Mr. McMaken.  The crux of the case is whether the MRI that was ordered by pain management providers was timely performed, whether the delay in obtaining the MRI was a breach of the standard care,

and whether the immediate need for an MRI was communicated to residents by Drs. Saxe and Tchorz. The tenor of the stipulations suggests that plaintiffs doubt whether residents were made aware of the order for the MRI or the urgency of performing it, but they are willing to concede that there is no evidence to the contrary. However, the issue whether the residents were aware of the order or its urgency is an issue for trial and does not alter the fact that residents were present at the relevant times and that Drs. Saxe and Tchorz were teaching residents at such times.

{¶ 24} As stated in *Theobold*, "'[i]n many instances, the line between [the physician's] roles (practicing and teaching) is blurred because the practitioner may be teaching by simply providing the student or resident an opportunity to observe while the practitioner treats a patient.'" Id. at ¶16 quoting *Theobald v. Univ. of Cincinnati*, 160 Ohio App.3d 342, 2005-Ohio-1510, ¶34. In affirming the holding of the Tenth District Court of Appeals, the Supreme Court agreed that "the question of scope of employment must turn on what the practitioner's duties are as a state employee and whether the practitioner was engaged in those duties at the time of an injury." Id. at ¶23. The Court of Appeals had explained that "anytime a clinical faculty member furthers a student or resident's education, he promotes the state's interest. Because the state's interest is promoted no matter how the education of the student or resident occurs, a practitioner is acting within the scope of his employment if he educates a student or resident by direct instruction, demonstration, supervision, or simple involvement of the student or resident in the patient's care." *Theobald*, supra, 160 Ohio App.3d 342, 2005-Ohio-1510, ¶47.

{¶ 25} Based upon the parties' joint stipulations, the court concludes that the duties of Drs. Saxe and Tchorz as state-employed professors of medicine included treating patients at defendant university hospital and that they were engaged in those duties at the time of the alleged negligence. Therefore, the court concludes that Drs. Saxe and Tchorz were acting within the scope of their state employment at all times pertinent hereto.

{¶ 26} The joint stipulation of facts is hereby APPROVED and the court finds that Drs. Saxe and Tchorz are entitled to immunity pursuant to R.C. 2743.02(F) and 9.86. Therefore, the courts of common pleas do not have jurisdiction over any civil actions that may be filed against them based upon the allegations in this case.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JAMES C. MCMAKEN, et al.

     Plaintiffs

     v.

WRIGHT STATE UNIVERSITY

     Defendant
     Case No. 2009-03801

Judge Alan C. Travis

JUDGMENT ENTRY


This case was submitted to the court on a joint stipulation of facts regarding the civil immunity of Kathryn Tchorz, M.D. and Jonathan Saxe, M.D. Upon review of the stipulations, and for the reasons set forth in the decision filed concurrently herewith, the court finds that Kathryn Tchorz, M.D. and Jonathan Saxe, M.D., are entitled to immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas do not have jurisdiction over any civil actions that may be filed against them based upon the allegations in this case.

_____
ALAN C. TRAVIS
Judge

cc:

Brian M. Kneafsey Jr.
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Michael A. Baer
210 West Main Street
Troy, Ohio 45373

John D. Holschuh Jr.
Sarah Tankersley
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

LH/cmd/Filed July 12, 2010/To S.C. reporter July 22, 2010